IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM RUSSELL GARRETT,  )   No. C 06-5182 SBA (pr)
             )
    Petitioner,   )   **ORDER DENYING PETITION FOR**
v.           )   **WRIT OF HABEAS CORPUS**
             )
D.L. RUNNELS, Warden,   )
             )
    Respondent.  )
_____)   (Docket Nos. 40 & 41)

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. As grounds for habeas relief Petitioner alleges, inter alia, that trial counsel rendered ineffective assistance. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

### I.   Case History

In 2003, a Santa Cruz Superior Court jury convicted Petitioner of residential burglary. The trial court found true allegations that Petitioner had suffered three prior convictions within the meaning of Three Strikes, and had suffered four prior convictions for purposes of other sentencing enhancements. The trial court sentenced Petitioner to a total term of thirty-seven years to life in state prison. Petitioner appealed. The California Court of Appeal for the Sixth Appellate District affirmed Petitioner's conviction.[1] (Ans., Ex. 3 at 1.) The California Supreme Court denied his petition for review, and his petition for writ of habeas corpus.[2] (Am. Pet. at 4-5.) Petitioner filed his first petition in 2006, and filed an amended petition, which added claims, in 2008.

---

[1] The state appellate court did not rule on any of the claims Petitioner presents here in federal court.

[2] A second petition to the California Supreme Court is pending. (Ans., P. & A. at 1.)

**II.   Facts**

The state appellate court summarized the facts of the case as follows:

> [On June 24, 2002,] [w]hile distributing flyers for their housecleaning business, [Petitioner] and Donna Pilgreen happened upon a full mailbox that contained a foreclosure notice. [Petitioner] gained entry to the home's garage and had Pilgreen give him a screwdriver. [Petitioner] then entered the home and let Pilgreen inside via the front door. They removed from the home stereo-television components, computer equipment, jewelry, coins, wine, lamps, a bicycle, and seven Persian rugs. They placed the property in Pilgreen's van, drove to the home they shared, and unloaded everything but one rug. They then drove to Watsonville and offered to sell the rug to Kevin Davis. Davis declined. [Petitioner] and Pilgreen then drove back to the home they had burglarized to get more rugs. But, as they walked on the driveway, a deputy sheriff arrived. [Petitioner] fled. Pilgreen identified [Petitioner] as her companion, and the deputy found the rug, [Petitioner's] identification, and papers belonging to the burglarized homeowner in Pilgreen's van. Pilgreen led police to the rest of the stolen property.

(Ans., Ex. 3 at 2.) At trial, Petitioner "presented a defense of mistaken identity," asserting that David Melberg, and not Petitioner, committed the burglary with Pilgreen. Melberg, whom Petitioner met while in jail awaiting trial, testified at trial that he and Pilgreen alone had committed the burglary. (Id.)

## DISCUSSION

**I.   Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.

1    Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).

2        Habeas relief is warranted only if the constitutional error at issue is structural error or
3    had a "'substantial and injurious effect or influence in determining [the] jury's verdict.'"
4    Penry v. Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S.
5    619, 638 (1993)); see, e.g., DePetris v. Kuykendall, 239 F.3d 1057, 1061 (9th Cir. 2001)
6    (exclusion of evidence was an unreasonable application of federal law and had a substantial
7    and injurious effect on verdict).

### A.    Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Williams v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

#### 1.    Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision

cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [T]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### B. **Sections 2254(d)(2), 2254(e)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by addressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is

governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000. If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining [the] jury's verdict." Penry, 532 U.S. at 795 (quoting Brecht, 507 U.S. at 638).

## III. Claims

As grounds for federal habeas relief, Petitioner alleges that (A) the prosecutor committed misconduct; (B) his trial counsel rendered ineffective assistance; (C) his appellate counsel rendered ineffective assistance; (D) he was denied his Sixth Amendment right to a jury trial on his prior convictions; (E) he was denied due process at trial stemming from the denial of reasonable accommodations in violation of the Americans with Disabilities Act; and (F) that the trial court, trial counsel, and the prosecutor retaliated against him for exercising, or attempting to exercise, his constitutional and statutory rights.

### A. Prosecutorial Misconduct

Petitioner claims that the prosecutor failed to disclose material evidence in violation of Petitioner's due process rights as they are articulated in Brady v. Maryland, 373 U.S. 83 (1963). (Am. Pet. at 8.) Each alleged violation will be discussed individually below.

Upon a request by a criminal defendant, the government has an obligation to surrender favorable evidence that is "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Put differently, to establish a Brady violation, the defendant must show that exculpatory or impeaching evidence was suppressed by the state, either willfully or inadvertently, resulting in prejudice. Morris v. Ylst, 447 F.3d 735, 741 (9th Cir. 2006). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

7

As part of this discovery obligation, the prosecution must disclose to the defense a government agreement with a witness that may motivate the witness to testify and that may affect the outcome of the trial. Giglio v. United States, 405 U.S. 150, 154-55 (1972). To prevail on a claim that the prosecution suppressed evidence of such a deal, petitioner must first demonstrate the existence of an agreement between the government and the witness. See Williams v. Woodford, 384 F.3d 567, 597 (9th Cir. 2004). When the government relies on a criminal informant, it must disclose "all information bearing on the witness's credibility," including his criminal record "and any information therein which bears on credibility." Belmontes v. Brown, 414 F.3d 1094, 1113 (9th Cir. 2005) (overruled on other grounds by Ayers v. Belmontes, 549 U.S. 7, 127 (9th Cir. 2006)).

### 1. Evidence Associated with David Melberg

Petitioner alleges that the prosecutor withheld evidence found in the back of a stolen truck which was connected to David Melberg. David Melberg, testified at trial that he, not Petitioner, committed the crime at issue here, and committed many burglaries and robberies in the few months following the burglary of which Petitioner was found guilty of committing. The police seized a truck Melberg had stolen and which contained the stolen property Melberg had taken during his crimes. Petitioner contends that the prosecution failed to present the "exculpatory and material" evidence found in Melberg's truck to the defense. (Am. Pet. at 8.)

Petitioner's Brady claim is without merit because he has not shown that the prosecution suppressed this evidence. Rather, the Melberg evidence was presented, pursuant to a stipulation by the parties, as defense exhibits at Petitioner's trial, identified as Exhibits N, O, P, Q, R, S, T, U, V, W, X, Y, Z, and AA. (Ans., Reporter's Transcript ("RT"), Vol. 15 at 2023.) Because this evidence was available to Petitioner, there was no Brady violation. Therefore, Petitioner's claim is denied.

### 2. Recordings

Petitioner contends that the prosecutor failed to turn over taped conversations or recorded radio transmissions of conversations between the police and Pilgreen in the police vehicles on the night of June 24, 2002. This information would have given his defense "the proper context in which to frame Ms. Pilgreen's admission[]s" and a chance to impeach her credibility. (Am. Pet. at 8.)

Petitioner's <u>Brady</u> claim is without merit because he has not shown either that such recordings existed or that, if they existed, that the prosecution suppressed them. In fact, there is no evidence that there ever was a taped conversation between Pilgreen and the police regarding on the night of the crime.[3] (Ans., RT, Vol. 13 at 1643.) Because Petitioner has not shown that such a recording existed, his <u>Brady</u> claim is denied.

### 3. Alleged "Deal" with Pilgreen

Petitioner claims that the prosecutor "failed to acknowledge or turn over any evidence of the "Deal" made with Donna Pilgreen, [evidence of which is] implicit in [the prosecutor] not charging Ms. Pilgreen with several crimes . . . [including] possession of stolen property, possession of methamphetamine, possession of drug [paraphernalia], driving under the influence, [and disability fraud]." (Am. Pet. at 8.)

According to the trial record, the parties stipulated to the fact that Donna Pilgreen pleaded guilty to one count of residential burglary for the crimes she committed with Petitioner on June 24. The parties also stipulated that Pilgreen's testifying against Petitioner was not part of her plea agreement. (Ans., RT, Vol. 11 at 1176-77.) Pilgreen herself testified to this fact, and asserted that she was not offered money or a lessened sentence, or any other incentive, to testify. (<u>Id.</u> at 1051-53.) In fact, the record is bare of evidence that the prosecutor offered Pilgreen any incentives to testify against Petitioner, or that the prosecutor

---

[3] According to the trial record, the prosecutor, pursuant to a defense discovery request, did provide Petitioner with an audio tape recording of the police dispatch and a log printout for the June 24th burglary, and a 911 tape recording. (Ans., CT, Vol. 2 at 27-42.)

coerced her into so doing.

Based on this record, Petitioner's claim is without merit. The record shows that Petitioner knew the terms of Pilgreen's plea agreement, and that her testifying against Petitioner was not such term. Petitioner has not shown any evidence that there was a "deal" between the prosecution and Pilgreen, but rather asserts that because the prosecutor declined to charge Pilgreen with numerous other offenses, some "deal" must exist. Such conclusory allegations are insufficient. The prosecution's decision not to charge Pilgreen with these other alleged offenses could have been based on any number of considerations, and Petitioner has not shown any evidence that a deal between Pilgreen and the prosecution was a likelier basis for the declination to prosecute than any other consideration. Accordingly, Petitioner's claim is denied.

### 4. Medical Records

Petitioner claims that the prosecution subpoenaed Petitioner's medical records without notifying or turning them over the defense. (Am. Pet. at 8.)

Petitioner has not shown a violation of Brady. That is, Petitioner has not alleged or shown that these records contained exculpatory or impeaching evidence, let alone that the withholding of such evidence may have resulted in prejudice. Petitioner asserts only that the prosecution obtained the records and did not disclose their contents to Petitioner. This is insufficient. Because he has not shown evidence that a Brady violation occurred, his claim fails.

### B. Effectiveness of Appellate Counsel

Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise Petitioner's ADA and conflict of interest claims on appeal. (Am. Pet. at 16.)

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986). A defendant therefore must show that counsel's advice fell below an objective standard of

reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849). It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. See Jones v. Barnes, 463 U.S. 745, 751-54 ( 1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. See Miller, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason -- because he declined to raise a weak issue. Id.

Applying these legal principles to the instant matter, the Court concludes that Petitioner's claim is without merit because Petitioner has failed to demonstrate that he suffered prejudice because of appellate counsel's performance. The Court addressed Petitioner's ADA and conflict of interest claims below and found that they lack merit. In reiterating these claims here, Petitioner has not shown that these claims would have been found meritorious on appeal. Therefore, Petitioner has failed to show that but for appellate counsel's performance, there was a reasonable probability that Petitioner would have prevailed on appeal. Accordingly, Petitioner's claim is denied.

**C.     Effectiveness of Trial Counsel**

Petitioner contends that his trial counsel rendered ineffective assistance in various ways, as detailed below. (Am. Pet. at 9.)

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-68. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability

1 that, but for counsel's unprofessional errors, the result of the proceeding would have been
2 different." Id. at 694.  A reasonable probability is a probability sufficient to undermine
3 confidence in the outcome.  Id.  Where the defendant is challenging his conviction, the
4 appropriate question is "whether there is a reasonable probability that, absent the errors, the
5 factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

### 1. Conflict of Interest

Petitioner claims that his trial counsel could not provide constitutionally adequate representation because she had a conflict of interest.  Petitioner alleges that this conflict of interest arose from her prior representation of Petitioner in a criminal matter unrelated to the instant action, and from her simultaneous representation of Petitioner and Petitioner's neighbor, Nick Bues.  Petitioner asserts that evidence of trial counsel's conflict of interest and her consequent ineffective assistance is seen in her failure to impeach Pilgreen, her failure to present two alibi witnesses, Chris Furr and Brian Jacobson, her failure to investigate the possibility that Bues committed the burglary with Pilgreen, and her accusing Petitioner of plotting to murder his co-defendant.  (Am. Pet. at 9-14.)

To prevail on a conflict of interest claim "absent objection, a defendant must demonstrate that 'a conflict of interest actually affected the adequacy of his representation.'" Mickens v. Taylor, 535 U.S. 162, 168 (2002) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980)).  The presence of the mere possibility of a conflict is insufficient.  Cuyler, 446 U.S. at 350; Morris v. State of Cal., 966 F.2d 448, 455 (9th Cir. 1991).

Petitioner's claim is without merit.  The record shows that trial counsel vigorously cross-examined both witnesses and in so doing elicited statements that would tend to impeach the witnesses' credibility.  In the case of Pilgreen, trial counsel questioned her about her drug and alcohol use, her relationship with Petitioner, her participation in the crime, the fact that she was able to plead guilty and lessen the severity of her punishment, and the fact that she was under the influence when the crime was committed.  (Ans., RT, Vol. 11 at 1126ff.)

Petitioner contends that Furr's and Jacobson's testimony would have negated Pilgreen's testimony that Petitioner participated in the burglary, and testifying witness Karen Thompson's statements that Petitioner admitted to committing the crime. Based on the record, however, the Court concludes that Petitioner has not shown that trial counsel's action constituted a deficient performance. Trial counsel stated her tactical reasons for not calling Chris Furr and Brian Jacobson: they were easily impeachable, Jacobson being a white supremacist[4] and both men having prior convictions of crimes involving moral turpitude. (Ans., RT, Vol. 9 at 529; CT, Vol. 1 at 132, 138.) Tactical decisions of trial counsel, such as whether to call a witness, deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). The trial record indicates that all three conditions appear to be present here. Trial counsel did base her decision the strategic consideration that the two witnesses were easily impeachable, a decision which appears to be an informed one after an investigation in the witnesses' backgrounds, all of which support the idea that the decision was reasonable under the circumstances. On this record, it appears that trial counsel's actions were reasonable tactical decisions, and therefore deserve the deference of this federal habeas court.

Petitioner's final two claims are without merit. As to Bues, Petitioner has not pointed to any evidence that Bues was involved in the instant offense or that his participation was even a reasonable possibility -- Petitioner reiterates Bues's statement that he (Bues) was most likely in jail on the day of the burglary. (Am. Pet. at 10.) Without such evidence, the Court cannot say that trial counsel's failure to investigate Petitioner's assertion constituted a deficient performance.

---

[4] In fact, Petitioner and Jacobson both bear "Aryan brotherhood/white supremacists tattoos." (Ans., RT, Vol. 9 at 529.)

13

As to trial counsel's alleged accusation, Petitioner's assertion is flatly contradicted by the record. The facts relevant to this claim are as follows. At a hearing on pre-trial motions, trial counsel attempted to exclude possibly prejudicial evidence against Petitioner. In explaining the state of the evidence, trial counsel speculated that the prosecution, in order to counter defense evidence, "could fairly present evidence, in fact, that [a prosecution witness] is scared of [Petitioner] and is concerned that he will come and kill her, consistent with what he has said to her in the past should he get out." (Ans., RT, Vol. 9 at 505.) From this record, the Court concludes that trial counsel was merely speculating on what evidence the prosecution might present if trial counsel presented some other evidence. In sum, the Court concludes that Petitioner has not shown that trial counsel's comment, or that any other evidence, support his assertion that a conflict existed such that his Sixth Amendment right to counsel was violated. Accordingly, Petitioner's claims are denied.

### D.     Prior Convictions

Petitioner puts forth two claims regarding two prior convictions, one of which occurred in Washington and the other in California, both of which were used to calculate his sentence. First, Petitioner claims that he was denied his right to a jury trial on his Washington state conviction for second degree manslaughter,[5] which does not contain the same elements as California's second degree manslaughter. Second, Petitioner contends that his prior California conviction is constitutionally defective. (Am. Pet. at 14.)

Petitioner's claim regarding his right to a jury trial on his prior Washington conviction is without merit. According to the trial record, Petitioner waived his right to a jury trial on his prior conviction allegations. (Ans., RT, Vol. 9 at 506-08.) Also, Petitioner's claim that his Washington conviction does not have the same elements as California's second degree manslaughter is a state law claim, not a federal constitutional one. That is, whether a felony qualifies as a "serious felony" for purposes of Three Strikes is question of state sentencing

---

[5] In Washington, Petitioner pleaded guilty to second degree manslaughter. (Clerk's Transcript, Vol. 2 at 402.)

14

law and does not state a federal constitutional claim. Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989).

Also, the state court explicitly found that this prior conviction qualified as a "serious felony" for purposes of Three Strikes. (Reporter's Transcript, Vol. 18 at 3041.) Federal courts generally are bound by state court interpretation of its own laws. See Melugin v. Hames, 38 F.3d 1478, 1487 (9th Cir. 1994). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Petitioner has not made any showing that the alleged misapplication of California's sentencing laws resulted in fundamental unfairness.

As to his claim that his prior California conviction is constitutionally invalid, a petitioner generally may not attack the constitutionality of a prior conviction used to enhance a later sentence. "[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403-04 (2001) (citation omitted).

The only exception to the rule barring challenges to prior convictions used to enhance current sentences is that a petitioner may challenge a prior conviction on the ground that there was a failure to appoint counsel in that case in violation of the Sixth Amendment. Coss, 532 U.S. at 404. A plurality in the Supreme Court recognized an additional exception when, through no fault of petitioner's, the constitutional claim was not reviewed, e.g., the state court refused to rule on a properly presented constitutional claim or there is newly discovered evidence of actual innocence. See id. at 405-06.

Applying these legal principles to the instant matter, the Court concludes that petitioner's claim is barred under Coss, cited above. That is, this Court must assume that the prior conviction is valid because Petitioner has not shown that this prior conviction is open to direct or collateral attack. Furthermore, Petitioner has not shown that his claim falls under the exceptions listed in Coss. Accordingly, Petitioner's claim fails.

**E.     Reasonable Accommodation**

Petitioner claims that the trial court denied him reasonable accommodations in violation of the Americans with Disabilities Act ("ADA"). (Am. Pet. at 14.) More specifically, Petitioner contends that he suffers from various mental disabilities that require treatment with medication. At trial, Petitioner requested various medications, including Straterra, and then after experiencing problems with that drug, Cyclert, both of which the trial court ordered the jail to provide to Petitioner. The jail, however, provided an alternative medication, C that, according to Petitioner, caused Petitioner to experience sleepiness and great mood swings. Petitioner contends that the effects of this inferior medication caused him to not be "mentally present for most of the trial." (Am. Pet. at 14-15.)

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," including access to the courts. 42 U.S.C. § 12132; Tennessee v. Lane, 541 U.S. 509 (2004).

Petitioner's claim is without merit. First, assuming, arguendo, both that Petitioner can bring an ADA claim here, and that Petitioner has a disability, or disabilities, he has not shown that there was a reasonable accommodation the trial court could have provided. In short, Petitioner has not shown that being prescribed Straterra was not a reasonable accommodation. Specifically, Petitioner wanted to try a new medication, Straterra, which Petitioner, after having read "all the stuff on it," believed to be effective. Petitioner himself had not taken the medication before. It is therefore unclear whether this medication would

16

have provided the reasonable accommodation Petitioner sought.  Furthermore, the trial court did accommodate Petitioner's alleged disability.  The trial court ordered the jail to provide Petitioner with Stratterra, and then ordered the jail to provide Cyclert, but the jail did not have that medication.  Because the trial court attempted to provide Petitioner with the medications he wanted, the Court cannot say that Petitioner has established that he was denied reasonable accommodation by the trial court.

Second, the gravamen of Petitioner's federal habeas claim is that he was not mentally competent at the time of trial, owing to his medications.  The conviction of a defendant while legally incompetent violates due process.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 510 (9th Cir. 1994).  The test for competence to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - whether he has a rational as well as factual understanding of the proceedings against him."  Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir. 1985) (citing Dusky v. United States, 362 U. S. 402, 402 (1960), and Chavez v. United States, 656 F.2d 512, 518 (9th Cir. 1981)).  Due process requires a trial court to order a psychiatric evaluation or conduct a competency hearing if the court has a good faith doubt concerning the defendant's competence.  See Cacoperdo, 37 F.3d at 510.

A good faith doubt about a defendant's competence arises only if there is substantial evidence of incompetence.  See id. at 510.  Several factors are relevant to determining whether a hearing is necessary, including evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.  See id.  Even one of these factors standing alone may, in some circumstances, be sufficient to create a reasonable doubt regarding the defendant's competence.  See id. at 1319.

Petitioner's claim is without merit.  Applying the factors articulated in Cacoperdo, the Court finds that nothing in the record to support a finding that Petitioner exhibited signs of irrational behavior, or that his demeanor at trial indicated a lack of mental competence, or that there was a medical opinion as to his mental state -- in sum, there is no evidence that the

1 trial court had a reason to hold a competence hearing. Rather, the record indicates that
2 Petitioner had sufficient present ability to consult with his lawyer with a reasonable degree of
3 rational understanding, and that he had a rational as well as factual understanding of the
4 proceedings against him. Accordingly, Petitioner's claims fails.

### F.   Retaliation

Petitioner claims that the trial court, the prosecution, and trial counsel had retaliatory "motives" against him, and interfered with his access to the "remedial mechanisms" provided by the ADA. More specifically, Petitioner contends that the trial court, the prosecution, and trial counsel retaliated against him for trying to pursue his rights under the ADA and for filing a civil rights action against them for alleged violations of the ADA. (Am. Pet. at 18.)

Petitioner's claim is without merit. Other than his conclusory allegations, Petitioner has pointed to no evidence that supports his contention that the trial court or the counsels retaliated against him. This claim is an attempt to restate his previous claims, all of which the Court has addressed above. Accordingly, Petitioner's claim fails.

## VI.   CONCLUSION

For the foregoing reasons, the Court concludes that the state court's rejection of Petitioner's claims was not contrary to or an unreasonable application of clearly established federal law. Accordingly, the petition for a writ of habeas corpus is DENIED as to all claims. Petitioner's motion for an order and factual findings by the Court (Docket No. 40), which essentially is a motion to reconsider both the Court's ruling on Petitioner's motion for the appointment of counsel (Docket No. 38) and to reconsider his claims of retaliation and ADA violations by his jailor, is DENIED. Petitioner's motion for an evidentiary hearing (Docket No. 41) is DENIED AS MOOT. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 5/20/09

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

WILLIAM RUSSELL GARRETT,

        Plaintiff,

  v.

D.L. RUNNELS et al,

        Defendant.

Case Number: CV06-05182 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 21, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

William R. Garrett V-30110
California Men's Colony
P.O. Box 8101
San Luis Obispo, CA 93409-8101

Dated: May 21, 2009

                Richard W. Wieking, Clerk
                By: LISA R CLARK, Deputy Clerk